**NOT FOR PUBLICATION** **CLOSED**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
:
DAVID DANIELS,                      :
:
:
Plaintiff,           :        Civil Action No. 07-4921 (JAP)
:
v.                             :        **OPINION**
:
BOROUGH OF SPRING LAKE HEIGHTS :
and ARTHUR HERNER,                  :
:
Defendants.          :
_____:

PISANO, District Judge.

Plaintiff, David Daniels ("Daniels"), brought this action against defendants Borough of Spring Lake Heights ("Borough") and Arthur Herner ("Herner") for wrongful discharge based on a violation of his procedural Due Process rights under the Fourteenth Amendment of the United States Constitution, a violation of the provisions of 42 U.S.C. § 1983, and employment discrimination. In addition, Daniels alleged intentional and negligent infliction of emotional distress caused by his wrongful termination. This allegation however has been dismissed through stipulation.

Presently before the Court is a motion for summary judgment filed by the Defendants. The Court decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth herein, the Court grants the Defendants motion for summary judgment.

1

## I. Background

Plaintiff Daniels, a Caucasian male, was hired as an at-will employee in the Borough's Public Works Department on May 5, 1986. Certification of Theresa Casagrande ("TC Cert."), ¶ 4. As part of his employment as a Laborer, Daniels was required to obtain a commercial driver's license. Transcript of the Deposition of David Daniels ("DD Depo.") at 16:4-7 attached as Ex. B to Certification of Phillip G. Ray ("PR Cert."); TC Cert., ¶ 5. In May 1996, the Borough implemented a Drug Free Workplace Policy ("the Policy") applicable to all employees who have a commercial driver's license. PR Cert., Ex. C; TC Cert., ¶ 2.

The Policy mandates drug testing in accordance with the Department of Transportation regulations requiring employees with commercial driver's licenses to be drug and alcohol tested pre-employment, annually on a random basis, after an accident occurring during employment, upon reasonable cause, and randomly six times in a twelve month period following the employee's return to work after a violation. PR Cert., Ex. C. Upon receipt of a positive test, the Policy requires the Borough to confirm the results with a second test before action is taken. *Id*. Once confirmed, the Medical Review Officer ("MRO") interviews the employee about the positive results; it is at this meeting that the employee is afforded the opportunity to have a split test conducted and to offer any explanations for the positive test results. *Id*. If the MRO concludes that the positive result was due to unauthorized drug use, the employee is referred to a rehabilitation program. *Id*. Participation in the program is required for the employee to continue his employment. *Id*. Employees are allowed to return to work once a negative test result is received and they have complied with the treatment recommendations. *Id*. For the next twelve months of their employment, the employee will be randomly tested six times. *Id*. Any

subsequent positive tests will lead to immediate termination. *Id*. Currently, the Borough employs Prevention Specialists to provide the drug testing analysis. TC Cert., ¶ 3.

Prior to implementation of the Policy, the Defendants fully explained the details of the Policy to Daniels. DD Depo. at 18:3-24. Daniels adequately understood the provisions of the Policy. *Id*. On March 28, 2005, Daniels tested positive for cocaine. PR Cert., Ex. E. Daniels did not dispute the results admitting to cocaine use a few days prior. DD Depo. at 32:1-8. Daniels spoke with an MRO regarding the possibility of a false positive. *Id*. at 33:6-18. The MRO determined that Daniels was not taking any prescription drugs that would cause such a result. *Id*. Daniels entered a four month rehabilitation program; he returned to work right away and was permitted to drive his vehicle following a negative test result. *Id*. at 33:19-35:25; PR Cert., Ex. E. On December 7, 2005, Herner directed Daniels to have a drug test performed. DD Depo. at 38:1-5; PR Cert., Ex. E. At the testing facility, Daniels's initial urine specimen was not within the acceptable temperature range and he was asked to provide a second specimen. DD Depo. at 39:10-16; PR Cert., Ex. E & D. Daniels willingly provided a second urine specimen within the proper temperature range. DD Depo. at 39:19-21; PR Cert., Ex. D. The second urine specimen tested positive for cocaine. PR Cert., Ex. D & E. On December 12, 2005, the Borough terminated Daniels employment after receiving his second positive drug test. TC Cert., ¶ 6. Daniels did not receive a "Rice Notice" from the Borough allowing him to discuss his termination with the Borough Council. Certification of David Daniels, ¶ 3.

Prior to Daniels's positive drug testing, two Borough employees—Joseph Yuka and Shaun Fury—were terminated due to violations of the Policy. TC Cert., ¶10; Transcript of the Deposition of Shaun Fury ("SF Depo.") at 12:10-12 attached as Ex. I to PR Cert. Joseph Yuka ("Yuka") is a Caucasian male who was hired as a Laborer of the Borough on April 23, 1990. TC

3

Cert., ¶ 8, 11.  Shaun Fury ("Fury") is a Caucasian male who was hired as a Laborer by the Borough in 1988.  SF Depo. at 7:13-23.  Per Borough requirements, Yuka and Fury held a commercial driver's license and were bound by the terms of the Policy.  TC Cert., ¶ 9; Transcript of the Deposition of Joseph G. Yuka ("JY Depo") at 13:23-24 attached as Ex. H to Certification of Phillip G. Ray ("PR Cert.").  On January 10, 1997, Yuka and Fury were directed to submit to a drug test which they refused to partake in upon the advice of their lawyer.  JY Depo. at 30:24-31:3; PR Cert., Ex. J.  Yuka and Fury were suspended from work for their refusal to submit to a drug test; however, three days later Yuka and Fury were reinstated with back pay after the Borough determined that their request for the drug test did not comply with the Policy.  JY Depo. at 28:12-17; PR Cert., Ex. J.  In accordance with this finding, the Borough notified Yuka and Fury that their refusal would not affect their employment.  JY Depo. at 28:12-17; PR Cert., Ex. J.

 Following this incident, Yuka tested positive for cocaine on September 15, 1998.  PR Cert., Ex. G.  According to the Policy, Yuka entered a treatment program where he was regularly drug tested.  JY Depo. at 44:5-8.  While in treatment, the assistance program alerted Yuka that he had submitted a positive drug test.  *Id*. at 44:15-17.  After meeting with Yuka and speaking to Herner, the assistance program determined that the test was a false positive triggered by Yuka's consumption of poppy seeds.  *Id*. at 44:5-21.  On November 9, 2004, Yuka tested positive for cocaine; this test was confirmed and reviewed by the MRO.  JY Depo. at 36:14-21; PR Cert., Ex. J; TC Cert., ¶ 42. On November 12, 2004, Yuka received a "Rice Notice" from the Borough advising him that his termination would be discussed at the Borough Council meeting on November 22, 2004.  Certification of Joseph Yuka, ¶ 9.   At the closed meeting, Yuka presented testimony as to why his employment should not be terminated.  *Id*. at ¶ 5.  The Borough Council

4

agreed to terminate Yuka's employment and informed him of his termination on November 23, 2004.  *Id*. at ¶ 6.

In 1998, Fury failed his first drug test by refusing to submit to the test.  SF Depo. at 16:6-12.  In 1999, Fury tested positive in his second drug screening test.  *Id*. at 12:10-19.  After a sample split and retest, the positive drug test was confirmed.  *Id*. at 134:1-9.  The Borough terminated Fury on December 31, 1999.  *Id*. at 12:10-14.

On October 11, 2007, Plaintiff filed a five-count Complaint alleging deprivation of a property interest without Due Process under the Fourteenth Amendment and violations of the provisions of 42 U.S.C. § 1983, employment discrimination, and intentional and negligent infliction of emotional distress.  PR Cert., Ex. A.   Daniels has agreed by stipulation to withdraw the claims for negligent and intentional infliction of emotional distress.  *Id*. at ¶ 5.

**II. Discussion**

  **A.  Summary Judgment Standard**

To prevail on a motion for summary judgment, the moving party must establish "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The district court must determine whether disputed issues of material fact exist, but the court cannot resolve factual disputes in a motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

In determining whether a genuine issue of material fact exists, the court must view the facts in the light most favorable to the non-moving party and extend all reasonable inferences to that party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Stephens v. Kerrigan*, 122 F.3d 171, 176-77 (3d Cir. 1997).  The moving party always bears the initial burden of demonstrating the absence of a genuine issue of material fact, regardless of

which party ultimately would have the burden of persuasion at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met its opening burden, the non-moving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  *Id*. at 324.  Thus, the non-moving party may not rest upon the mere allegations or denials of its pleadings.  *Id*.  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id*. at 322.

Once the moving-party has demonstrated to the court the absence of a material fact at issue, the Supreme Court has stated that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . ."  *Matsushita*, 475 U.S. at 586-87 (citations omitted).  In other words, "[i]f the evidence [submitted by the non-moving party] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (citations omitted).

The Supreme Court has specifically recognized that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupportable claims or defenses, and [] that [the rule] should be interpreted in a way that allows it to accomplish this purpose."  *Celotex*, 477 U.S. at 323-24.  Thus, "[w]hen the record is such that it would not support a rational finding that an essential element of the non-moving party's claim or defense exists, summary judgment must be entered for the moving party."  *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 341 (3d Cir. 1990).

### B. Procedural Due Process Claim

Plaintiff Daniels argues that his Fourteenth Amendment right to procedural due process was violated because his termination infringed upon a constitutionally protected property interest in continued employment. The Due Process Clause of the Fourteenth Amendment holds that no state shall "deprive any person of life, liberty or property, without due process of law." U.S. Const. amend. XIV, § 1. To state a claim for a violation of procedural due process rights, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006). Thus, the threshold issue with respect to Plaintiff's procedural due process claim is whether Plaintiff was deprived of a "cognizable liberty or property interest." *Mudric v. Attorney General*, 469 F.3d 94, 98 (3d Cir. 1995) (noting that "[i]t is axiomatic that a cognizable liberty or property interest must exist in the first instance for a procedural due process claim to lie"). Property interests are not created by the Constitution, but rather are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 577 (1972). In this case, the Court must look to these "rules or understandings," i.e., statutory or regulatory provisions, express or implied contracts, to determine whether Plaintiff had a legitimate claim of entitlement to continued employment.

In the realm of employment, a plaintiff has a property interest when there is a legitimate entitlement to continued employment, not simply a unilateral expectation in continued employment. *Id.* at 577. A public employee, absent a statutory or contractual entitlement to his

7

job, has no legitimate property interest in continued employment. *Id*. at 578.   Similarly, an at-will employee does not have a property interest in a job and thus has no rights to procedural due process.  *Robertson v. Fiore*, 62 F.3d 596, 601 (3d Cir. 1995); *Morgan v. Union County Bd. of Chosen Freeholders*, 268 N.J. Super. 337, 355 (App. Div. 1993).

As an at-will employee, Plaintiff has no property interest in continued employment with the Borough.  Plaintiff claims a property interest based on a reasonable expectation of employment established by the Policy, i.e., guaranteed employment until the failing of a second drug test.   The Borough's creation of the Policy however did not create a property interest under the Fourteenth Amendment.  First, Daniels was an at-will employee affording the Borough the ability to terminate his employment with or without cause.  As an at-will employee, Daniels had no legitimate expectation in continued employment and thus no right to due process.  Second, the Policy did not establish any legitimate entitlement to continued employment so as to create a property interest.  The Policy was established to maintain safety standards for employees with commercial driver's licences.  While the Policy establishes a method of terminating employment for cause, the Policy does not indicate that the employee can *only* be terminated for failing a drug test.  In fact, Daniels's status as an at-will employee is unaffected by the Policy because the provisions only create one of many methods for the termination of an employee's employment; the Policy does not guarantee termination for cause.

In arguing for the existence of a property interest, Plaintiff's attempt to draw a comparison to *Perry v. Sindermann*, 408 U.S. 593 (1972), is misguided.  In *Perry*, the United States Supreme Court recognized that a provision in a college's tenure program could have created an entitlement to continued employment for a non-tenured professor. *Id*. at 602-03.  However, the provisions of the tenure program in *Perry* are distinguishable from the Policy in that the language specifically

8

addressed that the employee would have "permanent tenure as long as [the employee] displays a cooperative attitude toward his co-workers and his superiors." *Id*. at 600.  The Policy, on the other hand, does not address tenure or termination only for cause and contains no language to suggest that a standard drug testing policy was meant to make such guarantees.  Plaintiff fails to point to any such language in the Policy which creates a de facto tenure program.   As such, Daniel's unilateral expectations based on his interpretation of the Policy do not rise to the level of a property interest as seen in *Perry*.

Additionally, Plaintiff's claim that he is entitled to a hearing even if his property interest is not "fundamental" and due to the Borough's "de facto" Rice Notice procedure is unfounded. Plaintiff's inability to establish a protected property interest does not afford Daniels *any* procedural due process rights and hence does not guarantee him any form of a hearing regardless of whether the property interest is fundamental or not.  Since there is no right to a hearing, the Borough was under no obligation to provide Daniels with a Rice Notice to contest his termination.   Furthermore, the mere fact that one employee, Yuka, was given a public opportunity to contest his termination does not give rise to a de facto procedure that mandates such a process for all employees.

Finally, Daniels is not entitled to a hearing because the Borough did not place his good name, reputation, honor and integrity at stake.  Where a person's good name, reputation, honor and integrity are at stake in connection with the termination of employment, an employee is entitled to notice and an opportunity to be heard to clear his name. *Bd. of Regents*, 408 U.S. at 573.  Such a hearing is required however "[o]nly if the employer creates and disseminates a false and defamatory impression about the employee in connection with his termination." *Codd v. Velger*, 429 U.S. 624, 628 (1977).  Here, Daniels has presented no evidence that the Borough

9

made public or disseminated the results of his drug test or the news of his termination. Furthermore, even if such information was made public, there is no evidence presented that the results of the drug test were false or fabricated by the Borough.

### C. Section 1983 Claim

Plaintiff has failed to establish a claim under 42 U.S.C. § 1983 because Daniels has not identified a protected property interest under the Fourteenth Amendment. Section 1983 provides a remedy when a constitutionally protected right has been violated by a party acting under color of state law. *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To succeed on a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate: (1) the violation of a right secured by the Constitution, and (2) that the constitutional deprivation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Since Daniels has not shown he has a protected property interest in his continued at-will employment, there has been no constitutional deprivation and thus there is not a valid § 1983 claim.

### D. Employment Discrimination

Plaintiff alleges employment discrimination by the Defendants based solely upon the Borough's application of the Policy to their former employee Yuka in comparison to Daniels. Plaintiff offers no legal or statutory basis in their Complaint for an employment discrimination claim and, furthermore, does not address their discrimination claim in opposition to Defendants motion for summary judgment. Assuming Plaintiff intended to base his discrimination claim on Title VII of the 1964 Civil Rights Act or New Jersey's Law Against Discrimination ("LAD"), the facts viewed in the most favorable light to the Plaintiff do not support either claim.

Under Title VII and LAD, an employer is prohibited from discharging any employee by discriminating against the individual with respect to his race, color, religion, sex or national

origin.  42 U.S.C. § 2000e-2(a)(1) (2006); *Murphy v. Housing Auth. & Urban Redevelopment Agency*, 32 F. Supp. 2d 753, 763 (D.N.J. 1999).  A plaintiff raising a Title VII or LAD claim carries the initial burden of establishing a prima facie case for discrimination.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Murphy*, 32 F. Supp. at 763.   Hence, a plaintiff must show that he belongs to a protected class, has the proper qualifications for the job, was negatively affected by the defendant's employment decisions, and that he or she was treated less favorably than employees not within the protected class.  *McDonnell*, 411 U.S. at 802; *Mandel v. UBS/Paine Webber, Inc.*, 373 N.J. Super. 55, 70 (App. Div. 2004).

Here, Daniels has offered no evidence that he is a member of a protected class.  PR Cert., Ex. A.  In fact, Daniels, Fury and Yuka are all Caucasian middle-aged men and do not fall within any protected class of individuals.  *Id.*; TC Cert., ¶7, 11, 12.  Without identifying and establishing that Plaintiff is in a protected class, there can be no valid claim for discrimination.

### III. Conclusion

For the reasons set forth above, the Borough's motion for summary judgment is granted.  All claims in Plaintiff's complaint are dismissed pursuant to the Borough's motion.   An appropriate Order accompanies this Opinion.

/s/ JOEL A. PISANO  
United States District Judge

Date: September 18, 2009